The opinion of the coui t was delivered by
White, J.
The plaintiff., a judgment creditor of the defendants, *437 seized under execution certain sugar and molasses, as well as other property situate or found on the Alice plantation, parish of St. Charles. Bush & Levert, by way of third opposition, enjoined the further execution of the writ, on the ground that the defendants were indebted to them in the sum of 359979 77, with interest from various dates, along with ten per cent attorneys’ fees, with brokerage and commissions. That the indebtedness, resulted from advances made by them as factors, which advances were secured by a contract of privilege and pledge, under the act of 1874 (Acts of 1874, page 114). That as pledgees of the crop they were in constructive legal possession thereof, the seizure being consequently a violation of their rights. The plaintiff joined issue, denying the right to the injunction, and prayed for its dissolution with damages. Subsequently, an agreement was entered into between the parties, to which we shall hereafter advert, by which Bush & Levert sold the entire crop, obligating themselves to retain in their hands a sum equal to the amount of Mrs. Laloire’s claim. Various creditors claiming rights on the crop intervened, and sundry creditors who had intervened in the suit of Citizens’ Bank vs. Wiltz, pending in the district court, parish of St. Charles, and lately decided by us, transferred by consent their claims to this suit. The whole were tried below, and one judgment rendered, dismissing the intervenors, and as between Mrs. Laloire and Bush & Levert, decreeing the latter entitled to the proceeds of the crop by them sold. Mrs. Laloire alone appealed. In this court, the intervenors whose claims were dismissed below, and who did not appeal, have filed answers to the appeal praying the reversal of the judgment, and for a decree recognizing their rights. We will consider the intervenors’ pretensions before determining the controversy between Bush & Levert and Mrs. Laloire.
1. The intervenors are manifestly without the pale of relief; although their interventions were dismissed by the lower court, they did not appeal, and, therefore, can not complain. The only appellant before us is Mrs. Laloire, who seeks to reverse the judgment below, which was in favor of Bush & Levert, who are appellees, and it is a settled rule of practice that the prayer of one appellee to amend a judgment as to the others can not be entertained. Deblanc vs. Levasseur, 26 A. 542. Williams vs. Le Blanc, 14 A., 758. Tegart vs. McCaleb, 10 A. 290.
2. Mrs. Laloire complains on two grounds. First: That the lower court treated the parties as in concurso simply determining their rights to the fund; consequently not passing on the right of Bush & Levert to the injunction, or her prayer for damages consequent on the claimed illegal issuance thereof. Second: Because the claim of Bush & Levert was improperly allowed. We think neither complaint founded.
First: After the injunction issued, and after Mrs. Laloire had *438 answered in the manner already stated, the following agreement was entered into:
“It is hereby agreed that the entire lot of sugar and molasses seized, by virtue of an alias writ of fi. fa. issued in the above entitled case, by the sheriff of the parish of St. diaries shall be shipped to Messrs. Bush & Levert, of New Orleans, to be by them sold in the usual way, the wages for talcing off and making the said sugar and molasses to be paid out of the proceeds of sale thereof, and the balance, or an amount sufficient to pay the claim of plaintiff, to be held by said Bush & Levert, subject to the final decision of the controversy in the above entitled case, it being the true intent and meaning of all parties that the rights of every one shall be unaffected by this agreement.”
The very issue presented by the injunction was the right of Bush & Levert to reduce the crop to money, without regard to the seizure, their pretension being that the lien of the factor entitled them to sell, leaving creditors the faculty of exercising their rights on the proceeds. Whether such pretension was correct, is a matter which we are not called upon to decide, as the parties have consented to the sale of the crop by Bush & Levert, and to the retention by them of the proceeds. True, the agreement reserved the rights of the parties, but the reservation can not be considered as denying the very right which it expressly gave. We consider the consent as permitting Bush & Levert to sell, their power to retain as their own the balance held under the consent, being made to. depend on the establishing by Mrs. Laloire of a better right than theirs. This view is a response to the complaint, that the in j unction suit contained no prayer for personal judgment. The crop not seized by Mrs. Laloire on the twentieth of December, was seized on the twenty-fourth of the same month, subject, however, to a previous seizure made by the Citizens’ Bank as mortgaged creditors, under which the plantation was sold; under such circumstances, we do not consider the present case a suitable one for damages, even if the claim therefor was not waived by the agreement.
Second: We thiDk Bush & Levert have satisfactorily shown the sum of one thousand three hundred and sixty-four dollars and fifty cents ($1364 50) due for advances after the application of the entire proceeds of the crop. Wiltz testifies as to the correctness of the account, and says the amount was really advanced in money or supplies for carrying on the planting operations of the year. The account is generally attacked on the ground, that the proof does not adequately establish the necessary nature of the supplies. It is said that the showing of such necessity is an essential element of proof to create the privilege. Such was undoubtedly the rule under C. 0. 3217, which in terms gave the privilege, “for money actually advanced and used for *439 the purchase of necessary supplies, and the payment of necessary expenses for any farm or plantation.” But the act of 1874 has made an important modification of our law on this subject. It provides: “ That 'in addition to the privilege now conferred by law, any planter or farmer may pledge or pawn his growing crop of cotton, sugar, or other agricultural products, for advances in money, goods, and necessary supplies that he may require for the production of the same.” Acts 1874, p. 114. It is as plain as words can make it that the privilege which formerly was made to depend not only on the advance of the money but also for its actual use for necessary puposes, is now caused to result from the advance of the money, goods, and necessary supplies that may be required by the planter. The old law having been so modified, and Bush & Levert having'made and recorded their contract of pledge, under the terms of the act of 1874, and having shown the actual advance of the money, goods, and necessary supplies, were entitled to their pledge under the act of 1874; at all events, until their prima facie case was destroyed by proof that they had knowingly advanced the money or supplies for other than the purposes allowed by the act of 1874. Besides this general objection, the account is attacked as follows :
1. Objection is made to §2368 08 paid by Bush & Levert to the laborers, because at the time of the payment Bush & Levert took a subrogation. It is said, they did not advance the money, but bought up the claims ; that they only recorded their subrogation after plaintiff’s seizure, hence the claim of the laborers, which had not been otherwise recorded, is primed by plaintiff. The contract of Bush & Levert was recorded long prior to the seizure, and the payment by subrogation rendered the money used for that purpose none the less an advance. Besides, the consent expressly authorized the payment of the laborers.
2. Objection to §340 26, paid two engineers. This is we think answered by the ruling expressed on the previous one.
3. Item of §2514 39, paid Lambert for coal. Objected to because not a necessary supply, and because not subrogated to Lambert’s right. Coal is a necessary supply for making a sugar crop ; that such is the case is made evident by the fact that the coal left after taking off the crop is valued at $12, and claimed herein by plaintiff.
4. 5, and 6. These objections are all answered by the opinion we have expressed as to the effect of the act of 1874. In addition to these items of the account, it is said that the sums paid for laborers, brick masons, and others, for repairing the sugar-mill, and money advanced Wiltz for that purpose, give no privilege, because the law has given a privilege to the mechanic on the thing repaired, and there can not be two privileges for the one claim. That, besides,, no privilege results to ■the factor for money advanced for these purposes, because not requisite *440 for the production of the crop. The mechanic has a privilege, it is true, but because the payment by the factor creates a privilege in his favor, there are not two privileges for one debt, for the moment the factor pays, the debt of the mechanic ceases to exist, and the advance of the factor gives rise to his privilege. While the act of 1874 gives the factors privilege for money advanced for the production of the crop, we understand that such term is intended to convey production to a marketable state, and it is difficult to comprehend how advances to pay the neoessary mechanical labor to put the machinery in the condition to produce sugar do not come within the grasp of the statute. This reasoning answers the complaint as to the payments made in rebuilding or repairing the purgery which was blown down in the month of September. The coal claimed was seized on the plantation after the seizure by the bank, which issued from the district court of St. Charles. It was sold by the bank along with the plantation. It formed no part of the crop, and is not before us for distribution. The items for money paid Wiltz after the seizure we think are properly objected to under the evidence or, rather, want of it in the record, but as striking them from the account would leave Bush & Levert a balance due them, we can see no reason so to do.
We think the judgment below, so far as before us, did justice between the parties. It is affirmed.
Mr. Justice DeBlanc takes no part in the decision of this cause.